# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS,
### SHERMAN DIVISION

| | | |
|---|---|---|
| PLAINSCAPITAL BANK; | § | |
| | § | |
| Plaintiff, | § | Case No. 4:09-CV-00653 |
| | § | |
| v. | § | (Jury Requested) |
| | § | |
| HILLARY MACHINERY, INC., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT HILLARY MACHINERY INC.'S ORIGINAL ANSWER TO PLAINTIFF PLAINSCAPITAL BANK'S COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, HILLARY MACHINERY, INC. (hereinafter referred to as "Hillary Machinery"), Defendant herein, and files its Original Answer to Plaintiff PlainsCapital Bank's (hereinafter sometimes referred to as "Plaintiff" or "PlainsCapital") Complaint, Affirmative Defenses, Counterclaims, and Jury Demand, and in support thereof show as follows:

## ANSWER

1. The paragraph entitled "Complaint" of Plaintiff's Complaint is an introductory paragraph and requires no responsive pleading.

2. Hillary Machinery is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 1 of Plaintiff's Complaint and, therefore, denies the same.

3. As to paragraph 2, Hillary Machinery admits that it is a Texas corporation with its main office located at 1825 Summit Avenue, Suite 207, Plano, Texas 75074.

DEFENDANT HILLARY MACHINERY, INC.'S ORIGINAL ANSWER TO PLAINTIFF PLAINSCAPITAL BANK'S COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND - PAGE 1

355980.1 02273/0001

4. Hillary Machinery is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 3 of Plaintiff's Complaint and, therefore, denies the same.

5. Hillary Machinery is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 4 of Plaintiff's Complaint and, therefore, denies the same.

6. Hillary Machinery is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 5 of Plaintiff's Complaint and, therefore, denies the same.

7. As to paragraph 6, Hillary Machinery admits that it entered into a Commercial Account Agreement and Wire Transfer Authorization Agreement with Plaintiff in 2005.

8. As to paragraph 7, Hillary Machinery admits that it utilized Plaintiff's internet banking system, but denies the balance of the averments, if any, contained in paragraph 7.

9. As to paragraph 8, Hillary Machinery denies that on Monday, November 9, 2009, and Tuesday, November 10, 2009, Plaintiff received wire transfer orders in its name. Hillary Machinery is without knowledge or information sufficient to form a belief as to the truth of the balance of the averments contained in paragraph 8.

10. As to paragraph 9, Hillary Machinery admits that it notified Plaintiff that wire transfer orders were illegally placed through Plaintiff's internet banking system and

those wire transfer orders were not initiated by Hillary Machinery. Hillary Machinery is without knowledge or information sufficient to form a belief as to the truth of the averments in the remainder of paragraph 9.

11.     As to paragraph 10, Hillary Machinery admits that the total amount of the unauthorized wire transfer orders was Eight Hundred One Thousand Four Hundred Ninety Five and 00/100 Dollars ($801,495.00).

12.     As to paragraph 11, Hillary Machinery is without knowledge or information sufficient to form a belief as to the averment that Plaintiff made every effort to recover the monies transferred through the Fed Wire Funds Transfer System. Hillary Machinery denies that Plaintiff was successful in recovering almost Six Hundred Thousand and 00/100 Dollars ($600,000.00) of the allegedly unauthorized transfers as alleged in paragraph 11. Plaintiff only recovered Five Hundred Ninety One Thousand Four Hundred Ninety Five and 00/100 Dollars ($591,495.00) of the unauthorized and illegal wire transfers.

13.     As to paragraph 12, Hillary Machinery admits that it informed Plaintiff via letter on Friday, December 11, 2009, that Plaintiff's internet banking system failed to employ commercially reasonable security measures and that Plaintiff was responsible for recovering all monies illegally transferred from Hillary Machinery's accounts.

14.     As to paragraph 13, Hillary Machinery admits that Plaintiff failed to refund the monies that were illegally wired from its accounts with Plaintiff. As to the portion of paragraph 13 stating that these monies were unrecoverable, Hillary Machinery is without knowledge or information sufficient to form a belief as to this averment.

DEFENDANT HILLARY MACHINERY, INC.'S ORIGINAL ANSWER TO PLAINTIFF PLAINSCAPITAL BANK'S COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND - PAGE 3

355980.1 02273/0001

15. As to paragraph 14, to the extent Plaintiff incorporates paragraphs 1-13 in Plaintiff's Complaint, Hillary Machinery here incorporates the specific responses to paragraphs 1-13 of Plaintiff's Complaint, as set forth above.

16. Hillary Machinery is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 15 of Plaintiff's Complaint and, therefore, denies the same.

17. Hillary Machinery is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 16 of Plaintiff's Complaint and, therefore, denies the same.

18. Hillary Machinery is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 17 of Plaintiff's Complaint and, therefore, denies the same.

19. Hillary Machinery is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 18 of Plaintiff's Complaint and, therefore, denies the same.

20. Hillary Machinery is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 19 of Plaintiff's Complaint and, therefore, denies the same.

21. Hillary Machinery is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 20 of Plaintiff's Complaint and, therefore, denies the same.

DEFENDANT HILLARY MACHINERY, INC.'S ORIGINAL ANSWER TO PLAINTIFF PLAINSCAPITAL BANK'S COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND - PAGE 4

355980.1 02273/0001

22.     Hillary Machinery is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 21 of Plaintiff's Complaint and, therefore, denies the same.

23.     Hillary Machinery is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 22 of Plaintiff's Complaint and, therefore, denies the same.

24.     Hillary Machinery denies the allegations set forth in the paragraph which begins "WHEREFORE . . ." as they relate to Hillary Machinery.

25.     All averments in Plaintiff's Complaint not specifically referenced above are specifically denied.

26.     Hillary Machinery reserves the right to urge such additional defense as may become available or be appropriate by reason of investigation and discovery.

## AFFIRMATIVE DEFENSES

27.     Pleading further, if necessary, to the extent that Plaintiff's claims are based upon a theory providing for liability without proof of causation, said claims violate Hillary Machinery's due process rights under the United States Constitution and the Texas Constitution.

28.     Pleading further, if necessary, Hillary Machinery hereby gives notice that it intends to rely upon any other defense that may become available or appear during any discovery proceedings in this cause and hereby reserve their rights to amend its answer to assert any such defense.

DEFENDANT HILLARY MACHINERY, INC.'S ORIGINAL ANSWER TO PLAINTIFF PLAINSCAPITAL BANK'S COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND - PAGE 5

355980.1  02273/0001

# COUNTERCLAIMS

Hillary Machinery, for its counterclaims against Plaintiff alleges as follows:

## PARTIES

29.     Hillary Machinery is a Texas corporation with its main office located at 1825 Summit Avenue, Suite 207, Plano, Texas 75074.

30.     PlainsCapital is a commercial bank organized under the laws of the State of Texas, with its main office located at 5010 University Avenue, Lubbock, Texas 79413.

## JURISDICTION AND VENUE

31.     Jurisdiction over these counterclaims, is conferred by 28 U.S.C. §§ 1331, 1337, & 1367.

32.     PlainsCapital is subject to personal jurisdiction in this judicial district since PlainsCapital has brought a declaratory action against Hillary Machinery in this judicial district.

33.     Venue is proper in this judicial district, and PlainsCapital cannot complain of the same, because PlainsCapital has brought a declaratory action against Hillary Machinery in this judicial district.

## FACTUAL BACKGROUND

34.     The lawsuit by PlainsCapital against Hillary Machinery seeks to turn hundreds of years of secured transactions common law on its head. Banks are institutions established, in large measure, to provide a place for individuals and businesses to safely maintain their money. Historically, public policy has always dictated that a bank must bear the risk of loss of money stolen from the bank, because it is the bank

DEFENDANT HILLARY MACHINERY, INC.'S ORIGINAL ANSWER TO PLAINTIFF PLAINSCAPITAL BANK'S COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND - PAGE 6

355980.1  02273/0001

that is in the best position to keep that money safe. Now, PlainsCapital asserts that, although it was charged with safely maintaining Hillary Machinery's money, it is Hillary Machinery that must bear the loss associated with the theft of money from PlainsCapital.

35. PlainsCapital seems to assert that a password was stolen from Hillary Machinery, and that such was used to access Hillary Machinery's account at PlainsCapital, perhaps by some malware which allegedly infected Hillary Machinery's computer system. This, PlainsCapital would have the Court find, should exonerate PlainsCapital of responsibility for the loss of funds PlainsCapital was assigned to protect.

36. However, just as it would not be commercially reasonable for PlainsCapital to keep cash unguarded from thieves, it was not commercially reasonable for PlainsCapital to fail to implement security measures to secure electronic funds from known criminal endeavors.

37. On or about 2005, Hillary Machinery and PlainsCapital entered into a Commercial Deposit Account Agreement, Wire Transfer Authorization and Agreement, and ACH/IBS Origination Agreement and Authorization.

38. Through these agreements, Hillary Machinery entrusted its vital operating capital to PlainsCapital and received promises from PlainsCapital that its vital operating capital would be protected and secured, both physically and electronically.

39. PlainsCapital utilized an internet banking system to allow Hillary Machinery electronic access to its operating funds.

40.     PlainsCapital was solely responsible for securing its internet banking system to ensure that Hillary Machinery's vital funds were not stolen by third-parties.

41.     PlainsCapital was required by law to provide commercially reasonable security to protect against the unauthorized transfer of funds from Hillary Machinery's accounts to third-parties.

42.     In order to provide commercially reasonable security to protect against unauthorized transfers, PlainsCapital, according to the Federal Financial Institutions Examination Council ("FFIEC") Guidelines for Authentication in an Internet Banking Environment (the "FFIEC Guidelines"), should have required true multi-factor identification to access Hillary Machinery's accounts, in order to transfer funds.

43.     According to FFIEC Guidelines, true multi-factor identification must include two of the following three separate factors: (1) something a person knows; (2) something a person has; and (3) something the person is.

44.     According to FFIEC Guidelines, true multi-factor identification is especially necessary in an electronic environment where malware, phishing, and pharming are prevalent and utilized to perform electronic criminal activities.

45.     Published statistics now show that up to ninety percent (90%) of PCs are infected by some form of malware; that protecting against such infections requires full-time employment of multiple information technology professionals, an option not viable for a small business such as Hillary Machinery; and that infection should be assumed for all PC users.

DEFENDANT HILLARY MACHINERY, INC.'S ORIGINAL ANSWER TO PLAINTIFF PLAINSCAPITAL BANK'S COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND - PAGE 8

355980.1  02273/0001

46. Moreover, Microsoft has stated that there is no one hundred percent (100%) way to ensure that any PC will not be infected by malware.

47. Hillary Machinery was not required to secure PlainsCapital's internet banking system to ensure that its funds were not stolen and was not required to ensure that true multi-factor identification was employed by PlainsCapital to counteract the known threat posed by malware, phishing, and pharming – thereby providing commercially reasonable security.

48. Hillary Machinery did, however, utilize off-the-shelf internet security software to protect its computer system; followed the security software's recommendations for updates, scanning for viruses, purging files, and other security procedures; and also took reasonable steps to maintain the confidentiality and security of its passwords, codes, security devices, and related instructions for PlainsCapital's banking services.

49. On Sunday, November 8, 2009, a request for secure access codes to register a new internet protocol address to access Hillary Machinery's accounts with PlainsCapital originated in Italy and Romania. Hillary Machinery is not open for business on any Sunday and is certainly not located in Italy or Romania. Commercially reasonable monitoring of these requests would have revealed that they were outside the normal business practices of Hillary Machinery.

50. On Monday, November 9, 2009, and Tuesday, November 10, 2009, an unauthorized individual, or individuals, in Italy and Romania accessed PlainsCapital's internet banking system and was allowed to transfer funds from Hillary Machinery accounts.

51.     Approximately forty-seven (47) ACH transfers were made and approximately seventeen (17) wire transfers were made over the two-day period by PlainsCapital from accounts of Hillary Machinery. These transfers totaled in excess of Eight Hundred Thousand Dollars ($800,000.00). The volume (number of transfers) and size (total dollar amount) of the transactions was far beyond the normal activity for Hillary Machinery over a two-day period. Again, if commercially reasonable security measures had been employed by PlainsCapital, both the volume and the size of these transactions would have raised another red flag.

52.     Eight Hundred One Thousand Four Hundred Ninety Five and 00/100 Dollars ($801,495.00) in funds from Hillary Machinery's accounts were transferred by PlainsCapital through intermediary banks, to Delta Bank in Kiev, the Ukraine, Swedbank, Sberbank in Moscow, Russia, and to various other individuals.

53.     Hillary Machinery has never accessed any of its bank accounts from outside of the continental United States. Thus, if PlainsCapital had been monitoring these transactions in a commercially reasonable manner, the origin of the transfer requests would have immediately raised an additional red flag that the transactions were not legitimate.

54.     Furthermore, Hillary Machinery has never made a wire transfer to or from any of these banks, individuals, or geographic areas. Thus, once again, if PlainsCapital had been monitoring these transactions in a commercially reasonable manner, this should have immediately raised yet another red flag that the transactions were not legitimate.

55.   After learning of the unauthorized transfer of its vital operating capital, David Weber, President of Hillary Machinery, met with officials of PlainsCapital on Thursday, November 12, 2009, to discuss the impropriety of the transfers and to make arrangements for recovering the funds.

56.   On Friday, November 13, 2009, Mr. Weber signed affidavits to prove that the wire transfers were not authorized by Hillary Machinery.

57.   On that same day, PlainsCapital acknowledged that the wire transfers originated in Italy and Romania and were made from newly registered internet protocol addresses that had never been used before by Hillary Machinery.

58.   On Monday, November 16, 2009, Mr. Weber was informed of the return of Five Hundred Ninety One Thousand Four Hundred Ninety Five and 00/100 Dollars ($591,495.00).

59.   On Tuesday, November 17, 2009, however, Mr. Weber was informed that Two Hundred Twenty Nine Thousand Nine Hundred Thirty Nine and 00/100 Dollars ($229,939.00) would not be returned by PlainsCapital.

60.   As a basis for its refusal to return Hillary Machinery's funds, PlainsCapital asserted that its internet banking system was secure.  This assertion provided Hillary Machinery, which had just lost Two Hundred Twenty Nine Thousand Nine Hundred Thirty Nine and 00/100 Dollars ($229,939.00) through PlainsCapital's internet banking system, with little consolation.

61.   Hillary Machinery demanded that PlainsCapital repay Hillary Machinery the Two Hundred Twenty Nine Thousand Nine Hundred Thirty Nine and 00/100 Dollars

DEFENDANT HILLARY MACHINERY, INC.'S ORIGINAL ANSWER TO PLAINTIFF PLAINSCAPITAL BANK'S COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND - PAGE 11

355980.1  02273/0001

($229,939.00) that was still outstanding from the unauthorized transfers on Monday, November 9, 2009, and Tuesday, November 10, 2009.

62. On Friday, December 11, 2009, Hillary Machinery sent PlainsCapital correspondence informing PlainsCapital that it did not provide commercially reasonable security for its internet banking system for Hillary Machinery's accounts.

63. Hillary Machinery informed PlainsCapital that its systems failed to provide security procedures for Hillary Machinery that met the prevailing standards of good banking practice.

64. In particular, PlainsCapital's internet banking system utilized only a user identification, password, and secure access code to authorize access to customer accounts from any internet protocol address in the world — single-factor identification because of its singular use of something "a person knows."

65. True multi-factor security systems, including those used by competitor banks such as Bank of America, Citi, Chase, Wells Fargo and Comerica, require user identification and password in addition to image and word recognition, multiple challenge questions, single-use access codes generated from wallet cards, and multi-tiered computer authorization procedures to register a computer terminal for use on a banking system.

66. It appears that PlainsCapital's position in this lawsuit is that its internet security system, while not as good as many other banks, is just "good enough." However, PlainsCapital's security system is not only not as good as those used by some of its competitors, it does not comply with even minimum industry standards and is

**DEFENDANT HILLARY MACHINERY, INC.'S ORIGINAL ANSWER TO PLAINTIFF PLAINSCAPITAL BANK'S COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND - PAGE 12**

355980.1  02273/0001

therefore not commercially reasonable. Hillary Machinery reasonably expected, and should have been provided, true multi-factor security procedures to protect Hillary Machinery's operating capital.

67.   On Thursday, December 31, 2009, and without further contact with Hillary Machinery, PlainsCapital took the unprecedented step of suing its own customer, Hillary Machinery.   How ironic for Hillary Machinery, which had already lost substantial funds as a result of PlainsCapital's failure to provide commercially reasonable security procedures for its internet banking system, to then be hauled into federal court to defend against a lawsuit brought by PlainsCapital.

68.   Notably, PlainsCapital's Complaint does not detail the mechanisms it alleges it used to keep Hillary Machinery's funds safe from thieves.   Nor does PlainsCapital advise the Court of the mechanisms used by other banks to ensure their customers' funds are safe.   These factual matters are unaddressed by PlainsCapital's Complaint because industry standards demand a much higher level of security than was delivered to Hillary Machinery by PlainsCapital.

69.   Not only did PlainsCapital sue Hillary Machinery, but on Tuesday, January 19, 2010, PlainsCapital sent a letter to Hillary Machinery in which PlainsCapital attempted to place the blame for the security breach and unauthorized transfer of funds on Hillary Machinery.

70.   PlainsCapital stated in that letter that its internet banking system provided security procedures that were consistent with FFIEC Guidelines.

**DEFENDANT HILLARY MACHINERY, INC.'S ORIGINAL ANSWER TO PLAINTIFF PLAINSCAPITAL BANK'S COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND - PAGE 13**

355980.1  02273/0001

71.     PlainsCapital's letter failed to mention that FFIEC Guidelines discourage the use of an internet protocol address, the other factor utilized by PlainsCapital as an identification factor in its internet banking security procedures (along with user identification and password), as an additional identification factor when internet protocol address verification or geo-location information is not used to track and define the normal user area for an account and alert the bank when something is out of the ordinary.

72.     Utilization of internet protocol address verification and geo-location information to track and verify a particular internet protocol address is something PlainsCapital apparently does not do. PlainsCapital's internet banking system, however, states at its login page that activity on its system is monitored for security purposes. In fact, PlainsCapital's website pages which describe its internet banking system use the word "secure" fifty two (52) times. Sadly for Hillary Machinery, PlainsCapital grossly misrepresented the status of security on its internet banking system.

73.     To make matters worse, PlainsCapital had the capacity to monitor transactions in the manner suggested by the FFIEC Guidelines, but simply refused to do so, perhaps as a cost saving measure. This is evidenced by the fact that PlainsCapital was able to quickly geo-locate the source of the thieves' wire transfer requests as originating from European countries from which Hillary Machinery has never operated. If PlainsCapital had simply utilized geo-location data available to it to verify the authenticity of the wire transfers and secure its internet banking system in the first

**DEFENDANT HILLARY MACHINERY, INC.'S ORIGINAL ANSWER TO PLAINTIFF PLAINSCAPITAL BANK'S COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND - PAGE 14**

355980.1  02273/0001

place, as mandated by the FFIEC Guidelines and routinely done by other banks, the theft of Hillary Machinery's money would not have occurred.

## FIRST CLAIM FOR RELIEF
(Breach of Contract)

74.    Paragraphs 29-73 of this Counterclaim are incorporated herein by reference.

75.    Hillary Machinery entered into a valid and enforceable contract with PlainsCapital on or about 2005. In fact, there were three valid and enforceable agreements – the Commercial Deposit Account Agreement, Wire Transfer Authorization and Agreement, and ACH/IBS Origination Agreement and Authorization.

76.    Hillary Machinery is the proper party to sue under these agreements because it owned the accounts that these agreements covered.

77.    Hillary Machinery properly performed all of its obligations under the contracts including, but not limited to, abiding by PlainsCapital's security protocols, monitoring and reporting, on Thursday, November 12, 2009, the unauthorized transfers for its accounts that occurred on Monday, November 9, 2009, and Tuesday, November 10, 2009, and cooperating in loss recovery efforts on Friday, November 13, 2009, through signing affidavits to prove that the wire transfers were fraudulent, and participating in conference calls and meetings to discuss the wire transfers on Friday, November 13, 2009, Monday, November 16, 2009, and Tuesday, November 17, 2009.

78.    PlainsCapital breached its contract with Hillary Machinery by, among other things, authorizing illegal wire transfers; failing to fully cooperate in the loss recovery efforts

DEFENDANT HILLARY MACHINERY, INC.'S ORIGINAL ANSWER TO PLAINTIFF PLAINSCAPITAL BANK'S COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND - PAGE 15

355980.1 02273/0001

of Hillary Machinery by refusing to refund the remaining Two Hundred Twenty Nine Thousand Nine Hundred Thirty Nine and 00/100 Dollars ($229,939.00) that was stolen from Hillary Machinery through PlainsCapital's inadequate internet banking system; and by failing to engage in efforts to provide commercially reasonable security for its internet banking system.

79. These breaches by PlainsCapital have caused Hillary Machinery damages in the form of lost operating capital in the amount of Two Hundred Twenty Nine Thousand Nine Hundred Thirty Nine and 00/100 Dollars ($229,939.00). Hillary Machinery is entitled to recover from PlainsCapital all actual and compensatory damages, as well as such other relief permitted by law.

## SECOND CLAIM FOR RELIEF
(Negligence)

80. Paragraphs 29-79 of this Counterclaim are incorporated herein by reference.

81. Pleading further, and in the alternative if necessary, PlainsCapital owed Hillary Machinery a duty of ordinary care in an internet banking transaction.

82. This standard of care is further defined by the FFIEC Guidelines demanding true multi-factor identification in internet banking transactions and requiring two of the following three factors: (1) something a person knows; (2) something a person has; and (3) something the person is.

83. These FFIEC Guidelines, and this standard of care, are followed by similarly situated banks, such as Bank of America, Chase, Citi, Wells Fargo, and Comerica.

84. PlainsCapital breached its duty to Hillary Machinery by failing to utilize true multi-factor identification in its internet banking transactions.

85. This breach has proximately caused Hillary Machinery damages in the amount of Two Hundred Twenty Nine Thousand Nine Hundred Thirty Nine and 00/100 Dollars ($229,939.00). Hillary Machinery is entitled to recover from PlainsCapital all actual, compensatory damages, and punitive damages, as well as such other relief permitted by law.

## THIRD CLAIM FOR RELIEF

### (Gross Negligence)

86. Paragraphs 29-85 of this Counterclaim are incorporated herein by reference.

87. Pleading further, and in the alternative if necessary, PlainsCapital owed Hillary Machinery a duty of ordinary care in an internet banking transaction.

88. This standard of care is further defined by the FFIEC Guidelines demanding true multi-factor identification in internet banking transactions and requiring two of the following three factors: (1) something a person knows; (2) something a person has; and (3) something the person is.

89. These FFIEC Guidelines, and this standard of care, are followed by similarly situated banks, such as Bank of America, Chase, Citi, Wells Fargo, and Comerica.

90. PlainsCapital breached its duty to Hillary Machinery by failing to utilize true multi-factor identification in its internet banking transactions.

91. PlainsCapital's actions, when viewed objectively from its standpoint at the time it took its actions in failing to properly secure its internet banking transactions,

involved an extreme degree of risk, considering the probability and magnitude of harm resulting from the loss of critical operating capital for Hillary Machinery.

92.  PlainsCapital had actual, subjective awareness of the risks posed by failing to use true multi-factor identification in its internet banking transactions, but proceeded anyway with conscious indifference to the rights, safety, or welfare of Hillary Machinery. This is evidenced by PlainsCapital's awareness of the FFIEC Guidelines, in its Tuesday, January 19, 2010 letter to Troy Owen of Hillary Machinery, but failure to implement those guidelines.

93.  These actions on the part of PlainsCapital entitle Hillary Machinery to the recovery of exemplary damages. Hillary Machinery is also entitled to recover from PlainsCapital all actual and compensatory damages, as well as such other relief permitted by law.

## FOURTH CLAIM FOR RELIEF
(Fraud)

94.  Paragraphs 29-93 of this Counterclaim are incorporated herein by reference.

95.  Pleading further, and in the alternative if necessary, PlainsCapital represented to Hillary Machinery that it would take commercially reasonable steps to ensure the security of its internet banking system.

96.  This representation was material to Hillary Machinery's choice to utilize PlainsCapital as the bank that would hold its vital operating funds.

97.     This representation was false because commercially reasonable security procedures for internet banking requires true multi-factor identification, according to the FFIEC Guidelines.

98.     According to the FFIEC Guidelines, true multi-factor identification in an internet banking transaction requires two of the following three factors: (1) something a person knows; (2) something a person has; and (3) something the person is.

99.     PlainsCapital utilized a user identification and password requirement and an internet protocol address as identification factors in an internet banking transaction.

100.    In order to register a new internet protocol address to conduct banking transactions on PlainsCapital's internet banking system, all a person needed was something a person knows, the user identification and password for a particular account to obtain a secure access code to register a new internet protocol address.

101.    PlainsCapital's use of only things that a person knows to register an internet protocol address to access its internet banking system is actually single-factor identification.

102.    Thus, PlainsCapital's representation that it would use commercially reasonable means, multi-factor identification, to ensure the security of its internet banking system was false.

103.    When PlainsCapital made its representation, it knew that such a representation was false because it knew it only used single-factor identification—something a person knows.

104.    PlainsCapital made the representation with the intent that Hillary Machinery would act on it in choosing to establish its commercial bank accounts with PlainsCapital.

105. Hillary Machinery relied on PlainsCapital's statement and established its commercial bank accounts with PlainsCapital.

106. PlainsCapital's representation that it utilized commercially reasonable security procedures to secure its internet banking system caused Hillary Machinery damages in the form of lost operating capital in the amount of Two Hundred Twenty Nine Thousand Nine Hundred Thirty Nine and 00/100 Dollars ($229,939.00). Hillary Machinery is entitled to recover from PlainsCapital all actual, compensatory damages, and punitive damages, as well as such other relief permitted by law.

## FIFTH CLAIM FOR RELIEF
(Violation of the Texas Uniform Commercial Code)

107. Paragraphs 29-106 of this Counterclaim are incorporated herein by reference.

108. Pleading further, and in the alternative if necessary, PlainsCapital violated Section 4A-202(b)(i) of the Texas Business and Commerce Code by failing to provide a commercially reasonable method of providing security against unauthorized payment orders.

109. This is evidenced by PlainsCapital's failure to utilize true multi-factor identification as required by the FFIEC Guidelines.

110. PlainsCapital's violation of Section 4A-202(b)(i) of the Texas Business and Commerce Code allows Hillary Machinery to recover the Two Hundred Twenty Nine Thousand Nine Hundred Thirty Nine and 00/100 Dollars ($229,939.00), along with applicable interest, under Section 4A-204(a) of the Texas Business and Commerce Code.

## SIXTH CLAIM FOR RELIEF
(Violation of the Texas Deceptive Trade Practices Act)

111.     Paragraphs 29-110 of this Counterclaim are incorporated herein by reference.

112.     Pleading further, and in the alternative if necessary, Hillary Machinery is a business consumer under the Texas Deceptive Trade Practices Act because it has assets of Twenty Five Million and 00/100 Dollars($25,000,000.00) or less.

113.     PlainsCapital can be sued under the Texas Deceptive Trade Practices Act because PlainsCapital provided Hillary Machinery services, which Hillary Machinery paid for, in connection with banking accounts maintained by PlainsCapital.

114.     PlainsCapital violated the Texas Deceptive Trade Practices Act by doing the following:

     a.    Representing that its internet banking services utilized commercially reasonable security measures;

     b.    Representing that its internet banking services met the FFIEC Guidelines for multi-factor identification; and

     c.    Representing that its internet banking system was "secure."

115.     PlainsCapital's false and misleading acts were the producing cause of Hillary Machinery's loss of Two Hundred Twenty Nine Thousand Nine Hundred Thirty Nine and 00/100 Dollars ($229,939.00). Hillary Machinery is entitled to recover from PlainsCapital all actual and compensatory damages, as well as such other relief permitted by law.

DEFENDANT HILLARY MACHINERY, INC.'S ORIGINAL ANSWER TO PLAINTIFF PLAINSCAPITAL BANK'S COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND - PAGE 21

355980.1  02273/0001

116. Furthermore, because PlainsCapital was fully aware of the need for true multi-factor identification for its internet banking system, and because it knowingly failed to employ true multi-factor identification for its internet banking system, but knowingly represented that it did so, Hillary Machinery is entitled to treble damages under the Texas Deceptive Trade Practices Act.

## SEVENTH CLAIM FOR RELIEF
(Negligent Misrepresentation)

117. Paragraphs 29-116 of the Counterclaim are incorporated herein by reference.

118. Pleading further, and in the alternative if necessary, PlainsCapital made a representation to Hillary Machinery in the course of PlainsCapital's banking business and in a banking transaction in which PlainsCapital made money through interest that it employed commercially reasonable security measures to secure its internet banking system.

119. PlainsCapital supplied the false information, that it employed commercially reasonable security measures to secure its internet banking system, for the guidance of Hillary Machinery in its business practices.

120. PlainsCapital did not exercise reasonable care or competence in obtaining or communicating information to Hillary Machinery that it employed commercially reasonable security measures to secure its internet banking system.

121. Hillary Machinery justifiably relied on PlainsCapital's representations regarding its internet banking system.

DEFENDANT HILLARY MACHINERY, INC.'S ORIGINAL ANSWER TO PLAINTIFF PLAINSCAPITAL BANK'S COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND - PAGE 22

355980.1  02273/0001

122. PlainsCapital's negligent misrepresentations proximately caused Hillary Machinery's loss of Two Hundred Twenty Nine Thousand Nine Hundred Thirty Nine and 00/100 Dollars ($229,939.00). Hillary Machinery is entitled to recover from PlainsCapital all actual and compensatory damages, as well as such other relief permitted by law.

## EIGHTH CLAIM FOR RELIEF
### (Attorneys' Fees)

123. Paragraphs 29-122 of this Counterclaim are incorporated herein by reference.

124. Pleading further, and in the alternative if necessary, Hillary Machinery is entitled to the recovery of its attorneys' fees under Chapter 38 of the Texas Civil Practice and Remedies Code.

125. Hillary Machinery is also entitled to the recovery of its attorneys' fees under Section 17.50(d) of the Texas Business and Commerce Code.

## HILLARY MACHINERY'S JURY DEMAND

126. Pursuant to Federal Rule of Civil Procedure 38, Hillary Machinery files this, its Jury Demand in this matter, contemporaneously with this responsive pleading.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Hillary Machinery respectfully prays that:

(a) This Court reject and deny all of PlainsCapital's claims against Hillary Machinery;

(b) This Court declare the security procedures utilized by PlainsCapital in its internet banking system were not commercially reasonable in November 2009;

(c) This Court find that PlainsCapital has breached its obligations to Hillary Machinery under the Commercial Deposit Account Agreement, Wire Transfer Authorization and

Agreement, and ACH/IBS Origination Agreement and Authorization and award Hillary Machinery its damages, as allowed by law;

(d)     This Court find that PlainsCapital was negligent in its handling of its internet banking system security and award Hillary Machinery its damages, as allowed by law;

(e)     This Court find that PlainsCapital was grossly negligent in its handling of its internet banking system security and award Hillary Machinery its damages, as allowed by law;

(f)     This Court find that PlainsCapital engaged in fraudulent conduct by representing that it utilized true multi-factor identification in its internet banking system security and award Hillary Machinery its damages, as allowed by law;

(g)     This Court find that PlainsCapital violated the Texas Uniform Commercial Code by failing to utilize a commercially reasonable method of providing security against unauthorized payment orders and award Hillary Machinery its damages, as allowed by law;

(h)     This Court find that PlainsCapital violated the Texas Deceptive Trade Practices Act and award Hillary Machinery its damages, as allowed by law;

(i)     This Court find that PlainsCapital made negligent misrepresentations to Hillary Machinery and award Hillary Machinery its damages, as allowed by law;

(j)     Award Hillary Machinery prejudgment interest, as allowed by law;

(k)     Award Hillary Machinery post-judgment interest, as allowed by law;

(l)     Award Hillary Machinery its reasonable and necessary attorneys' fees and costs incurred in defending this action and bringing these counterclaims; and

(m)     Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

By:     /s/Patrick F. Madden
        Patrick F. Madden
        State Bar No. 00787943
        John S. Kenefick
        State Bar No. 24006294
        Brian A. Sheguit
        State Bar No. 24060598

        MACDONALD DEVIN, P.C.
        3800 Renaissance Tower
        1201 Elm Street
        Dallas, Texas 75270-2014
        (214) 744-3300
        (214) 747-0942 (Facsimile)

        **ATTORNEYS FOR HILLARY
        MACHINERY, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the following counsel on this 15th day of February, 2010:

Diane K Lettelleir
Winstead PC
1201 Elm Street, Suite 5400
Dallas, Texas 75270

/s/ Patrick F. Madden
Patrick F. Madden

DEFENDANT HILLARY MACHINERY, INC.'S ORIGINAL ANSWER TO PLAINTIFF PLAINSCAPITAL BANK'S COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND - PAGE 25

355980.1  02273/0001